# IN THE COURT OF APPEALS OF IOWA

No. 19-0146
Filed March 20, 2019

**IN THE INTEREST OF E.K. and A.P.,**
**Minor Children,**

**H.P., Father,**
        Appellant,

**S.K., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for O'Brien County, David C. Larson, District Associate Judge.


        A mother and father separately challenge the termination of their parental rights.  **AFFIRMED ON BOTH APPEALS.**


        Tobias A. Cosgrove, Sibley, for appellant father.

        Kevin J. Huyser, Orange City, for appellant mother.

        Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

        Shannon Sandy of Sandy Law Firm, P.C., Spirit Lake, attorney and guardian ad litem for minor children.


        Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

A mother and father separately challenge the termination of their parental rights.

**I.       Background Facts and Proceedings**

The mother and father are the parents of E.K., born in 2009, and A.P., born in 2013.  The mother and father have been in an on-and-off-again relationship for years.  In 2014, the family was investigated by the Iowa Department of Human Services (DHS), which resulted in founded child-abuse assessments against both parents for denial of critical care.  The assessment against the father was the result of a domestic abuse incident in December 2013, during which the father choked the mother while she was holding A.P.  The father was charged with domestic abuse and child endangerment.  The assessment against the mother was the result of her selling drugs out of the home in May 2014 while the children were present.  The children remained with the father after the assessment against the mother because he was able to show he could care for the children at that time.

The family again came to the attention of DHS in May 2017 upon reports that the father was using methamphetamine while he was the children's primary caretaker.  DHS also received reports that the father's home was unsafe and the children had been subjected to domestic violence between the parents.  There were also reports that E.K. had missed a significant amount of school and A.P. had rotten teeth.  When DHS made an unannounced visit at the father's home, he refused to allow entry and exhibited physical indicators of drug use, including being very thin to the point his face was sunken, agitation, paranoia, and visible sores on his body.  The father also allowed the mother to spend time with the children

despite his awareness of her drug use as he deemed "there [was] nothing wrong with [the mother]." The father refused to cooperate any further, including refusing to allow drug testing, and he wanted no further contact from DHS. DHS also received police reports indicating the father was actively using and selling drugs in addition to begging local drug dealers for methamphetamine. Following an investigation, DHS returned a founded child-abuse assessment against the father for denial of critical care. The children were allowed to remain with the father because, though the children were at high risk for harm, there was insufficient evidence to support imminent danger.

In June, the State petitioned for the children to be adjudicated in need of assistance (CINA), and the court set the adjudication hearing for July. At the time of the adjudication hearing, the mother was believed to be homeless and an active methamphetamine user. After arriving for the hearing, the mother was arrested at the courthouse on an outstanding warrant. The State and DHS also requested the father complete drug testing, which he refused. After his refusal, the State sought the children's removal, which the court granted. The court transferred temporary custody of the children to DHS for placement in foster care. The father filed a notice of appeal and requested a stay pending a full removal hearing.[1] The court consequently continued the adjudicatory hearing until September.

Subsequent hair-stat testing of the children was negative for any illegal substances, while the father's drug test was positive for methamphetamine. The paternal grandmother communicated to the children's foster mother that A.P.

---

[1] The supreme court treated the father's appeal as an application for interlocutory appeal, which it denied.

needed to be seen by a dentist because during one of the mother's rages, she attempted to punch the father but A.P. was caught in the middle and the mother hit the child in the mouth. The children also reported to the foster mother that they witnessed domestic violence between the parents, including an incident in which the father punched and pinned the mother down. Further, E.K. reported to the foster mother that there was no running water at the father's home and that he witnessed the paternal grandmother shoving a towel down a cousin's throat as discipline during a time the father left E.K. with the grandmother to babysit.

The father was arrested twice in late July for driving while under suspension. On one occasion, police found drug paraphernalia with residue on his person while being searched at the jail. He claimed it was the mother's. The father was subsequently charged with possession of a controlled substance in a correctional facility.

After an evidentiary hearing, the court continued the children's removal. During a subsequent child advocacy interview, E.K. reported the mother's whereabouts were unknown and reported witnessing domestic violence between the parents in addition to violence between the father and a friend. E.K. also reported the father possessed a "real gun" and the father lied when he denied he possessed such a gun. E.K. described finding a bullet on the father's table once and found a package of Suboxone[2] in a box the father kept in his room. E.K. was also aware of the mother's drug use by walking in on her doing drugs on two occasions over the past two years.

---

[2] Suboxone is a prescription narcotic.

In August, the parents were arrested together after police found them in a South Dakota state park with methamphetamine. DHS subsequently returned additional founded child-abuse assessments against both parents in August and September. The court adjudicated the children CINA in September. The court ordered the parents to complete substance-abuse and psychological evaluations and submit to random drug testing.

Home studies were conducted of the maternal grandparents, a paternal grandmother, and a paternal aunt in late 2017. The maternal grandparents subsequently withdrew their request for a home study due to concerns over how the children could impact their own mental health. They also believed the children were in a stable foster home and they did not wish to disturb the arrangement. DHS did not recommend the paternal grandmother for possible placement due to her inability to keep healthy boundaries with the father and concerns about her possible drug use. DHS recommended the paternal aunt as a possible placement for the children. However, DHS did not continue pursuing her as a placement option due to an allegation regarding the paternal aunt's child. E.K. subsequently reported to the foster family that he was inappropriately touched by a cousin and was fearful of the cousin while at the paternal aunt's home. Further, E.K. reported witnessing drug use in the home. DHS investigated and determined there was insufficient evidence to return a founded child-abuse assessment with respect to these allegations.

DHS provided the father with supervised visits until March 2018, when he was arrested for domestic abuse assault after attacking and choking the mother. Since March, the father has not had face-to-face contact with the children. At the

time of the termination hearing, the father was in jail and had pending criminal matters in another county and in South Dakota.

Throughout most of the pendency of this case, the mother was incarcerated. She has not seen the children since their removal in July 2017. DHS tried to contact the mother numerous times to attempt to set up services, but the mother failed to respond. When the mother was released from jail in January 2018, she did request visitation at a meeting with DHS. After DHS explained the need for her to comply and exhibit some consistency in her substance-abuse treatment before starting visitation, the mother left the room. The mother was incarcerated again in mid-April for approximately one month. After her release in mid-May, the mother began making weekly telephone calls to the children. She also began taking steps to address her substance-abuse issues, but she tested positive for marijuana in July. At the time of the termination hearing, the mother also had pending criminal matters in South Dakota.

In July, the State petitioned to terminate both parents' parental rights. In January 2019, the court terminated both parents' parental rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2018). Both parents separately appeal.

## II.    Analysis

We review termination-of-parental-rights proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). "Our primary concern is the best interests of the child." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

"[R]eview of termination of parental rights under Iowa Code chapter 232 is a three-step analysis." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We must first determine if "any ground for termination under section 232.116(1) has been established." *Id.* If a "ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 219–20. "Finally, if we do find that the statutory best-interest framework supports the termination of parental rights, we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* at 220.

A.     Father's Appeal

The court terminated the father's parental rights pursuant to section 232.116(1)(e) and (f). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Termination pursuant to paragraph (f) requires the State to show:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f). "At the present time" refers to the time of the termination-of-parental-rights hearing. *See A.M.*, 843 N.W.2d at 111.

Here, the father does not contest the establishment of the first three elements. He seemingly challenges the establishment of the fourth. However, during the termination hearing, when asked at the termination hearing, "are you able to have the [children] in your care and custody today?" the father responded "I am not." Accordingly, we find the State proved the statutory grounds under paragraph (f) by clear and convincing evidence.

To the extent the father is challenging whether termination is in the children's best interest, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). When determining whether termination is in a child's best interests, "there is no all-encompassing best-interest standard*." In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *A.B.*, 815 N.W.2d at 778 (quoting *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000)).

Throughout the pendency of this case, the father has struggled with substance abuse and domestic violence. He consistently blamed the mother or DHS for his inability to take steps toward addressing his issues. The father expressed no concern with the possibility of placing the children with the paternal aunt despite E.K.'s allegations of incidents in the paternal aunt's home. While DHS determined there was insufficient evidence to return a founded child-abuse assessment with respect to these allegations, the father did not express any

concern about why E.K. made these reports. There was also evidence that E.K. has suffered psychologically given the trauma and neglect the parents' actions have placed upon the children. While the father argues that the children should be placed with the maternal grandparents or a paternal sister, "[a]n appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child. The child's best interests always remain the first consideration." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). Upon our de novo review, we find the children's best interests are served by the termination of the father's parental rights.

To the extent the father is arguing that a statutory exception to termination applies, "[t]he court need not terminate the relationship between the parent and child if . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The application of a statutory exception to termination under section 232.116(3) is "permissive not mandatory." *M.W.*, 876 N.W.2d at 225 (quoting *A.M.*, 843 N.W.2d at 113). "[T]he parent resisting termination bears the burden to establish an exception to termination." *A.S.*, 906 N.W.2d at 476. "[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent]'s inability to provide for [the children]'s developing needs." *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). Upon our de novo review, we find that although there is a bond between the father and the children, the record does not reflect that the bond outweighs the children's need for stability and permanency. We decline to apply an exception to termination.

B.      Mother's Appeal

The court also terminated the mother's rights pursuant to paragraphs (e) and (f) of section 232.116(1).   Like the father, she does not contest the establishment of the first three elements of paragraph (f).  She argues the reasons for the children's removal—domestic violence, the parents' drug use, and unsafe home conditions—no longer exist.  She contends that through her efforts, she has addressed and rectified the underlying conditions and, as such, the children would not suffer any harm if returned to her care.   Upon our review, we find that throughout much of the pendency of this case the mother has been incarcerated. During those times she was not incarcerated, she was transient and unemployed. At the time of the termination hearing, the mother, while employed, was severely underemployed so as not to be able to even support herself, let alone two children. She admitted she was entirely dependent on her fiancé for financial support and shelter.  Additionally, even though the mother has taken steps toward addressing her substance-abuse and mental-health issues, those steps occurred only within the few months before the termination hearing, and conditions remain that returning the children to her care could place them at risk.  Prior to her release from incarceration in May 2018, the mother avoided participation in services and has not seen the children face-to-face since their removal in July 2017.  Further, at the termination hearing, the mother did not argue that she was able to resume care of the children at the time, but instead requested additional time for reunification or the children's placement with either her parents or a paternal aunt. On our de novo review, we find there is clear and convincing evidence that the children could not be returned to the mother at the time of the termination hearing.

We also find the children's best interests are served by termination of the mother's parental rights. DHS has extended services to the mother since the children's removal, and she resisted those services until only the few months prior to the termination hearing. "Time is a critical element. A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 495. Further, like the father, she expressed no concern about E.K.'s report about incidents in the paternal aunt's home. The mother does not argue that a statutory exception to termination applies; therefore, we do not need to address the step as to her appeal. *See P.L.*, 778 N.W.2d at 40.

C.    Extension

Finally, both parents request additional time to allow for reunification. Section 232.104(2)(b) permits the juvenile court to continue the placement of a child for an additional six months to allow for reunification if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period." Upon our de novo review, we find the children were removed from the parents' care due to substance-abuse-related issues and neglect. Neither parent has followed through with services ordered by the court as recommended, and though the mother has taken steps to begin to address her substance-related issues, this only happened in the few months prior to the termination hearing. The children have been out of the home for over a year and have not seen either parent face-to-face for months; in the mother's case, it has been over a year. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will

learn to be a parent and be able to provide a stable home for the child." *A.B.*, 815 N.W.2d at 777 (quoting *P.L.*, 778 N.W.2d at 41). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). We decline to delay the children's permanency any longer. We therefore affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**